UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LENORE MILLER, et al.,**<br><br>     Plaintiffs,<br><br>v.<br><br>**ADCO LIBERTY MFG. CORP.,**<br><br>     Defendant. | 04-CV-3378 (WJM)<br><br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

Friedman & Wolf
William K. Wolf, Esq.
Anusha Rasalingam, Esq.
1500 Broadway, Suite 2300
New York, NY 10036

Jennings Sigmond
James Katz, Esq.
1040 North Kings Highway, Suite 300
Cherry Hill, NJ 08034

        (*Attorneys for Plaintiffs*)

McElroy, Deutsch, Mulvaney & Carpenter, L.L.P.
James G. Gardner, Esq.
1300 Mount Kemble Ave.
P.O. Box 2075
Morristown, NJ 07962

        (*Attorneys for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.**:

        This matter comes before the Court on the parties' cross-motions for summary judgment

as to Plaintiffs' entire Complaint.  There was no oral argument.  Fed. R. Civ. P. 78.  For the

following reasons, Defendant's motion for summary judgment is **DENIED** and Plaintiffs'

motion is **GRANTED**. Accordingly, Judgment in Plaintiffs' favor is hereby entered on the terms set forth in the accompanying Judgment and Order.

## BACKGROUND

This action is brought on behalf of the Retail, Wholesale and Department Store International Union and Industry Pension Fund (referred to herein as the "RWDSIU Fund") by its trustees and fiduciaries against Defendant Adco Liberty Manufacturing Corp. (referred to herein as "Adco") under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAA"), 29 U.S.C. §§ 1001–1461. Plaintiffs seek to recover statutory remedies for Adco's purported default on its "withdrawal liability" obligations. Adco does not dispute its withdrawal liability under the MPAA but simply disputes the applicability of the statute's default provisions. Unless otherwise indicated, the following facts material to the resolution of the pending summary judgment motions are not in dispute.

Under the terms of a series of collective bargaining agreements, Adco, until February 2003, was a contributing employer to the RWDSIU Fund, a multiemployer pension fund under ERISA. By letter dated February 26, 2003, Adco informed Plaintiffs that it would be closing and would, therefore, cease making contributions to the RWDSIU Fund as of February 28, 2003. Accordingly, the RWDSIU Fund, by letter dated March 4, 2003, notified Adco that it would have withdrawal liability and request the information necessary to calculate the amount. After receiving and processing this information, the RWDSIU Fund, by letter dated December 15, 2003, informed Adco that: (1) its total withdrawal liability is $180,870.00, payable in 80 consecutive quarterly installments of $2,445.00 with the first payment due February 13, 2004;

and (2) failure to commence and timely make withdrawal liability payments would constitute a "default" under ERISA entitling the RWDSIU Fund to its statutory remedies—that is, acceleration Adco's "withdrawal liability," liquidated damages, interest, and attorney's fees. There is no dispute that Adco received this letter. Nor is there any dispute that Adco subsequently received an invoice in January 2004 for the first quarterly withdrawal liability payment of $2,445, which sum came due on February 13, 2004.

After Adco failed to make its February 13, 2004 quarterly withdrawal liability payment, Plaintiffs, by letter dated March 2, 2004, sent Adco notice of its failure. The notice of delinquency noted that Adco had not made its first quarterly withdrawal liability payment and informed Adco that failure to make payment within 60 days would constitute "default." The return receipt for this mailing indicates, however, that it was returned to Plaintiffs undelivered.

Plaintiffs, having not yet received any quarterly withdrawal liability payments and apparently having not had any communication with Adco in the interim, filed suit on July 16, 2004 and thereafter, on August 17, 2004, served the Complaint on Adco. The one-Count Complaint, in relevant part, restated Adco's obligations to pay withdrawal liability to the RWDSIU Fund and noted that Adco failed to make its first quarterly withdrawal liability payment on February 13, 2004. In addition, the Complaint made reference to the March 2004 notice of delinquency and further noted that Adco had still had not made any quarterly withdrawal liability payments. Finally, the Complaint stated that as a result of Adco's failure to make its quarterly withdrawal liability payment within 60 days of receiving notice and pursuant to ERISA, Adco was in default and was, therefore, now obligated, pursuant to the relevant statutory provisions and contractual agreements, to pay the entire outstanding balance of

withdrawal liability ($180,870.00) as well as interest, liquidated damages, and attorneys' fees and costs. Adco did not tender payment within 60 days of the filing of the Complaint, and subsequent settlement discussions among the parties (between September and November 2004) were fruitless.

Based on these facts, the parties now cross move for summary judgment.

## ANALYSIS

### I.  Standard of Review

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *See Anderson*, 477 U.S. at 249.

### II.  Plaintiffs Are Entitled to Summary Judgment Because Adco Defaulted on Its Obligations to Make Quarterly Withdrawal Liability Payments and Because It Failed to Cure Its Default Within 60 Days of Receiving Notice

Adco argues that it may not be adjudged in default of its obligation to make quarterly withdrawal liability payments under the MPAA because there is no evidence that it in fact received the March 2004 written notice of delinquency and, alternatively, because "[the RWDSIU Fund] never provided Adco the opportunity to cure" following the filling of the

Complaint. (*See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. at 4–9) For the following reasons, the Court concludes that Adco may be deemed in default.

The MPPAA, which imposes mandatory liability on employers withdrawing from a pension plan, was enacted by Congress as an amendment to ERISA to ensure the financial stability of multiemployer pension plans. *Bd. of Trs. of the District No. 15 Machinists' Pension Fund v. Kahle Engineering Corp.*, 43 F.3d 852, 854 (3d Cir. 1994). As indicated, in relevant part, below, the MPAA sets forth an intricate scheme for the calculation and collection of the withdrawal liability; it also discusses default and the remedies available therefore:

> When an employer withdraws from a multiemployer plan, the plan sponsor must determine the amount of withdrawal liability, and "as soon as practicable" notify the employer of the amount of liability and the schedule for repayments and demand payment in accordance with that schedule. *See* 29 U.S.C. §§ 1382, 1399(b)(1). The plan sponsor must set up a schedule for withdrawal payments which may impose liability to a maximum of twenty years. *Id*. §§ 1399(b)(1)(A)(ii), 1399(c)(1). The first installment payment on the schedule is due within sixty days of the plan sponsor's demand. *Id*. § 1399(c)(2).
> . . . .
>
> Under the acceleration provision of the statute available in the event of a default, the "plan sponsor may require immediate payment of the outstanding amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id*. § 1399(c)(5); *see also* 29 C.F.R. § 2644.2(b)(2). For purposes of this section, default is defined as "the failure of an employer to make, when due, any payment if not cured within sixty days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). A default can also be "any other event defined by the plan rules which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id*. § 1399(c)(5)(B)

*Kahle*, 43 F.3d at 854 (footnote omitted); *see also* 29 U.S.C. § 1132(g)(2)(c) (stating that courts shall also award reasonable attorneys' fees and costs in any action initiated as a result of default).

In this case, even though the evidence fails to establish that Adco in fact received the

March 2004 notice of delinquency, there is no dispute that Adco was served on August 17, 2004 with the Complaint, which put Adco on notice of its February 2004 default. Adco has not cited, nor has the Court discovered, any authority prohibiting a finding that complaints such as the one before the Court may satisfy a fund's notice obligations. Indeed, there are several cases in which courts have permitted complaints to satisfy the MPAA's notice requirements. *See, e.g.*, *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. 1990) (treating complaint as sufficient notice); *Debreceni v. Merchants Terminal Corp.*, 740 F. Supp. 894, 900 (D. Mass.), *aff'd*,889 F.2d 1 (1st Cir. 1989) (same); *Central States, Southwest & Southwest Areas Pension Fund v. Royal Transps.*, No. 96-3641, 1997 WL 269594, at *1–*2 (N.D. Ill. May 15 1997) (same); *Bd. of Trs. of Trucking Employees of N.J. Welfare Fund v. Canny*, 900 F. Supp. 583, 591–93 (N.D.N.Y. 1995) (same). Allowing the RWDSIU Fund's Complaint to satisfy its notice obligations under the MPAA is, in this Court's opinion, consistent with the Third Circuit's prior declaration that "[d]ue to the remedial purpose of ERISA and the MPPAA, the MPPAA's notice provisions are liberally construed to protect pension plan participants." *Bd. of Trs. of Teamsters of Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 175 (3d Cir. 2002). The Court, therefore, holds that Plaintiffs' Complaint, which as described above stated that Adco was in default of its obligations to make quarterly withdrawal liability payments, satisfies the written notice of default requirement in the MPAA.

Given this holding and Adco's undisputed failure to "cure" its default (by, for example, tendering payment with respect to all its outstanding unpaid quarterly installments) within 60 days of having been served with the Complaint on August 17, 2004, the Court sees no reason why the acceleration, liquidated damages, interest, and attorneys' fees provisions of the MPAA

should not apply.  Adco's contention that it should be deemed to have cured its February 2004 default because sometime between September and November 2004 it offered to settle the entire action is without merit.  Nothing in the MPAA suggests that an employer may cure a default by offering to settle litigation commenced as a result of the employer's default.  Such an employer-friendly construction of the MPAA, by rewarding employers who delay meeting their withdrawal liability obligations, would run counter both to *Foodtown*'s direction that courts liberally construe the "MPPAA's notice provisions . . . to protect pension plan participants" and to the purpose of the MPAA: "The MPPAA was designed '(1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) . . . to ensure benefit security to plan participants.'"  *IUE AFL-CIO Pension Fund v. Baker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986) (quoting H.R.Rep. No. 869, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2918, 2939).  Adco, at any time within 60 days of having been served with the Complaint, could have tendered payment with respect to all its outstanding unpaid quarterly installments.  It did not.  Its statement now that it never had the "opportunity" to cure it default is, therefore, incompressible.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED** and Plaintiffs' motion is **GRANTED**.  Accordingly, Judgment in Plaintiffs' favor is hereby entered on the terms set forth in the accompanying Judgment and Order.

s/ William J. Martini  
**William J. Martini, U.S.D.J.**

cc:   The Honorable Ronald J. Hedges, U.S.M.J.